IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARY BECKER, AND DAVID H. BECKER,<br><br>    Plaintiffs,<br><br>v.<br><br>JASON BATEMAN, EDWARD L. RHOADES, AND HEBER CITY CORPORATION,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:07-cv-0311-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court is Defendants' motion for summary judgment on Plaintiffs' claims, which arise from a traffic stop that ultimately escalated into Mr. Bateman taking Mr. Becker to the ground in an attempt to place him under police custody. Among the various contentions, the parties dispute whether Mr. Bateman's actions were "objectively reasonable," and thereby protected by qualified immunity. Because Mr. Becker both verbally and physically resisted arrest, the court finds in favor of Defendants. The accompanying motion to strike is denied as moot.

## MOTION TO STRIKE

Defendants have moved to strike evidence concerning Mr. Bateman's former employer's personnel files as offered by Plaintiffs in opposition to Defendants' motion for summary judgment. (Dkt. No. 65). "The court may strike from a pleading an insufficient defense or any

1

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "However, on this motion the court 'did not apply or consider the complained-of . . . evidence when ruling on the motion for summary judgment.'" *James v. Frank's Westates*, No. 2:07-CV-0937, 2010 U.S. Dist. LEXIS 108042, at *2 (D. Utah Oct. 8, 2010) (quoting *Rich Floors, L.L.C. v. Jaylon, Inc.*, No. 08-cv-02291-LTB-BNB, 2010 U.S. Dist. LEXIS 42652, at *29 (D. Colo. Apr. 5, 2010)). Therefore, because the court finds that the evidence "is not material to the outcome," the motion to strike is denied as moot. *See Cannon v. Minn. Mining and Mfg. Co.*, 2009 U.S. Dist. LEXIS 10308, at *20 n.3 (D. Utah Feb. 11, 2009).

## FACTUAL BACKGROUND

On May 14, 2005, Mr. Becker was driving a vehicle through the parking lot of Days Market in Heber City, Utah. (Compl., ¶ 9.) Mr. Bateman initiated a traffic stop of the vehicle because the windshield of the vehicle was cracked. (Compl., ¶ 10.) During the ensuing conversation, Mr. Bateman inquired whether Mr. Backer had been drinking. (Compl., ¶ 13.) Mr. Becker did not respond, but repeatedly asked why he had been stopped. (Compl., ¶¶ 12-13.) Mr. Bateman then instructed Mr. Becker to get of the car and to perform various sobriety field tests, including the Horizontal Gaze Nystagmus test and a walking test. (Compl., ¶¶ 14-15.) After Mr. Becker refused to cooperate, Mr. Bateman attempted to physically take Mr. Becker into custody. (Compl., ¶¶ 15-16.) During this attempt, Mr. Bateman ultimately took Mr. Becker to the ground, which resulted in Mr. Becker suffering serious injuries to his head. (Compl., ¶ 20.) Exactly how these events transpired, as relevant to this case, are discussed more specifically, *infra*. Due to the fact that Mr. Bateman's dash-cam recorded the events leading to this cause of action, the relevant facts germane to this motion are not in dispute.

**DISCUSSION**

I.      **SUMMARY JUDGMENT STANDARD**

Defendants' motion for summary judgment will be granted, only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Although "[t]he movant has the burden of showing that there is no genuine issue of fact" in moving for summary judgment, "the plaintiff is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Id*. at 249.

I.      **QUALIFIED IMMUNITY**

Plaintiffs' central contention is that Mr. Bateman used excessive force against Mr. Becker during the arrest, thus violating Mr. Becker's constitutional rights. (Compl., ¶ 28.) However, because Mr. Bateman is a government official, Plaintiffs must first overcome his qualified immunity. The Supreme Court has stated that "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The Supreme Court has also stated that qualified immunity "shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Tenth Circuit has further held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). Thus, once a

defendant raises the qualified immunity defense, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right;" and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations omitted). The court will first consider the allegation that Mr. Bateman violated Mr. Becker's Fourth Amendment constitutional right.

## II. THE ALLEGED VIOLATION – EXCESSIVE FORCE

The Supreme Court has stated that a "Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (citations omitted). The Court has directed that "a claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Id*. (citations omitted). This means that a court must judge "a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. 386, 396 (1989). The objective reasonableness is therefore considered "in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." *Id*. at 397. Careful attention will be given to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). And because the events were recorded on Mr. Bateman's dash-cam and are undisputed, the court will determine whether Mr. Becker's constitutional rights were violated as a matter of law. *See Mecham v. Frazier*, 500 F.3d 1200,

1203 (10th Cir. 2007) (stating that "the question of objective reasonableness is not for the jury to decide where the facts are uncontroverted.").

During the course of the encounter, Mr. Bateman ordered Mr. Becker to take a number of actions, including participating in various field sobriety tests. Mr. Becker was adamant not to comply. Undoubtedly, Mr. Bateman was frustrated, if not irritated at Mr. Becker's obstinance and incessant questioning of why Mr. Bateman had stopped him. After ordering Mr. Becker to stand next to his car and participate in another sobriety test, Mr. Bateman spun Mr. Becker around and pushed him against his car.[1] He had not stated that Mr. Becker was under arrest. Rather, it was only after the physical altercation had begun that Mr. Bateman told Mr. Becker that he was under arrest. Even then, Mr. Bateman appears to back-off of the arrest in offering Mr. Becker one last opportunity to comply with the field sobriety test. Without a clear response, Mr. Bateman again begins to scuffle with Mr. Becker, which ultimately ends in Mr. Becker being taken to the ground and being injured.

The underlying offense – the cracked windshield – was not severe. Moreover, nothing in the video suggests that Mr. Becker was going to act violently or intended to flee. That being said, the court cannot ignore the surrounding circumstances and the fact that Mr. Bateman was dealing with a large, obstinate, incoherent, and seemingly inebriated individual, all of which created a situation permeated with unknowns. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) (noting that "individuals who are intoxicated are often unpredictable."). Indeed, the court is empathetic to the fact that police officers must often make quick judgments in "tense, uncertain, and rapidly evolving" situations. *Graham*, 490 U.S. at 396-97.

Most important, however, is what Mr. Becker did after Mr. Bateman told him that he was under arrest. Mr. Becker clearly responded "No" while physically resisting Mr. Bateman's

attempts to move his hands behind his back. Mr. Becker's language and physical actions indicate a clear resistance of arrest. And particularly in light of the physical scuffle that ensued after Mr. Bateman failed to successfully apply the wrist-lock, the court finds that Mr. Bateman's conduct in taking Mr. Becker to the ground was objectively reasonable.[2]

The court does not accept Plaintiffs' contention that Mr. Becker's statement of "No" was simply a "continuation of his plea not to be arrested." (Mem. Opp. Mot. Summ. J., 23.) Even if that were the case, however, the qualified immunity test is dependent not on what Mr. Becker meant, but what was reasonable in the eyes of the law enforcement officer. It is objectively reasonable to interpret Mr. Becker's "No" to mean that he intended to resist arrest. And given Mr. Becker's ability to physically resist Mr. Bateman's initial attempt to take him into custody by means of a wrist-lock, Mr. Bateman was justified to take more aggressive measures.[3]

This is not to say that Mr. Bateman could not have conducted himself differently. He could have been clearer in his warnings or asked Mr. Becker to physically conduct himself in a manner that would have mitigated possible injuries before engaging him with force. But under the law, the court cannot say that Mr. Bateman's conduct that led to the alleged excessive force rose to a "level of recklessness, rather than negligence." *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *See Graham*, 490 U.S. at 396. It is the court's judgment that Mr. Bateman acted within this right. The court

---

[1] *See* 14:08:02 of the dash-cam video recording.
[2] Although Mr. Becker's injuries were serious, the excessive force analysis is not result determinative. The severity of the injuries does not lessen the reasonableness of the conduct leading to those injuries.
[3] It is worth noting that contrary to Plaintiffs contention, what was or was not "necessary" is irrelevant. *See* (Mem. Opp'n. Summ. J., 24.) Indeed, "[t]he reasonableness standard does not require that officers use alternative less intrusive means." *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001).

therefore finds that that Mr. Bateman's actions were objectively reasonable, and that he neither used excessive force against Mr. Becker nor violated his constitutional rights.[4]

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on Plaintiffs' First Claim for Relief against Mr. Bateman is GRANTED. Regarding Defendants' motion for summary judgment against Plaintiffs' Second Claim for Relief and Third Claim for Relief, Plaintiffs have failed to rebut the contention that these claims fail where the underlying claim of excessive force fails. Defendants' motion for summary judgment on the remaining claims is therefore GRANTED.

DATED this 2nd day of March, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge

---

[4] Because the court finds that Mr. Bateman did not violate the constitutional rights of Mr. Becker, an analysis under the second prong of qualified immunity is moot.