IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **MARY K. BECKER, individually and as the guardian of DAVID H. BECKER,**<br><br>Plaintiffs,<br><br>vs.<br><br>**JASON BATEMAN, EDWARD L. RHOADES, and HEBER CITY CORPORATION,**<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07CV311DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Edward L. Rhoades and Heber City Corporation's Renewed Motion for Summary Judgment. On September 17, 2013, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Jordan Kendall and Defendants were represented by Peter Stirba. The court took the motion under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Procedurally, this case is on remand from the Tenth Circuit Court of Appeals. Judge Waddoups was initially assigned as the judge on this matter. Judge Waddoups determined that there was no constitutional violation, granted Defendant Jason Bateman qualified immunity, and dismissed the municipal liability claims against Defendants Heber City and Heber City Chief of

Police Rhoades. Although the Tenth Circuit affirmed Judge Waddoups' decision granting qualified immunity to Bateman, it found questions of material fact as to whether a constitutional violation occurred. As a result, on remand, Plaintiffs' claims against Defendants Heber City and Chief Rhoades for municipal liability under Section 1983 based on their decision to hire Bateman are reinstated. There is also a question as to whether Mary Becker still has a state law loss of consortium claim. Defendants move for renewed summary judgment on those reinstated claims.

On May 14, 2005, Officer Bateman initiated a traffic stop of David Becker's vehicle because the windshield of the vehicle was cracked. After speaking with Becker, Officer Bateman determined a field sobriety test was necessary. Officer Bateman instructed Becker to exit the vehicle. Becker repeatedly refused to comply. There is a question of fact as to whether Becker was resisting arrest. However, Officer Bateman took Becker to the ground, resulting in Becker sustaining a severe traumatic brain injury.

Before joining the Heber City Police Department in 2004, Officer Bateman worked as a deputy for the Wasatch County Sheriff's Department, where he began in May of 1999. Heber City hired Officer Bateman at a time when he was still employed by Wasatch County.

During Heber City's hiring process in 2004, Officer Bateman ranked number one in the testing of applicants for the position. The testing procedure included a half day of written tests and a physical agility test. The applicants then went through a board of review and the three highest applicants were picked. Heber City then performed background checks on the three highest applicants. The background check includes a detective following up on references and checking into prior employment and a criminal background check. At that point, the finalists had an interview with the Sheriff and possibly one other officer and a decision was made regarding the best candidate.

Heber City conducted this type of background check on Officer Bateman prior to offering him the position. Bateman had no criminal history and a fellow officer who worked with Bateman at Wasatch County gave Bateman a positive reference. As part of the background check, Heber City does not request personnel records from the applicant's prior employers.

After hiring Officer Bateman, Chief Rhoades requested training records from Wasatch County but did not receive any. Heber City did obtain Officer Bateman's training records from POST. Chief Rhoades had no concerns about hiring Officer Bateman: "He was the best applicant for the job. He applied to us. We didn't go search him out. He applied to us. He was the top ticket writer in the county and top DUI enforcement officer in the county. We got a golden ace."

While employed at Wasatch County, however, Officer Bateman had several incidents recorded in his personnel file. In November 1999, Officer Bateman was written up by his sergeant after an incident where Bateman was allegedly insubordinate. The report states that Bateman was not happy with his job because there was not enough action. He told his sergeant that he likes to fight and for the past while all he wants to do is "Walk the Line." Bateman stated that he gets a thrill when there is a chance that a fight will start and he can be involved. He also stated that he did not like to wear his vest on duty because the vest made him look bigger and stopped some people from becoming violent with him. His sergeant told him that he was concerned about his behavior. Bateman also told his sergeant that, while training at the police academy, he learned that if someone is resisting arrest, you throw them to the ground and take them to jail. The sergeant told him that is not how it is done in Wasatch County and that officers can only use the force necessary to take the suspect into custody. Bateman shrugged and started telling him that his law enforcement friends in other jurisdictions are always busy and slam

people to the ground. His sergeant recommended immediate termination after this conversation. However, Bateman was never terminated from Wasatch County and never had an excessive force incident while employed at Wasatch County.

The next incident in Officer Bateman's Wasatch County personnel file occurred in January 2001. Officer Bateman responded to a fatality after being specifically ordered not to respond. A report was written up about the incident. The report states that Bateman made comments to the effect that cops should be completely emotionless, and cold. Officer Bateman felt like all officers should be "Robocops" and have no heart when they are on duty.

Next, in December 2001, Bateman was the subject of a Wasatch County Sheriff's Office Disciplinary Action Report because several reports from concerned individuals showed suicidal ideation and a lack of personal hygiene. Other officers appear to have been concerned with Bateman's mental health.

Finally, in September 2002, Bateman was again the subject of a Disciplinary Action Report for using obscene and abusive language toward a female coworker. Bateman was placed on six months of probation and required to complete an anger management course.

Nothing further is recorded in Bateman's personnel file for his remaining two years with Wasatch County.

## DISCUSSION

### Defendants' Renewed Motion for Summary Judgment

**I. Municipal Liability**

Defendants move for summary judgment on the Beckers' claim that Defendants are liable under Section 1983 for their decision to hire Bateman. "A plaintiff suing a municipality under Section 1983 for the actions of one of its employees must prove: (1) that a municipal employee

committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comr's*, 151 F.3d 1313, 1317 (10th Cir. 1995). In this case, the Beckers allege that Heber City is liable for the actions of Officer Bateman because it hired Officer Bateman without reviewing his personnel records from his employer at the time, Wasatch County Sheriff's Office. Because the Tenth Circuit has already ruled that there is a question of fact as to whether Officer Bateman used excessive force, the only element that the court needs to consider is whether a reasonable jury could find that Heber City's hiring of Officer Bateman was the moving force behind the alleged constitutional violation.

The United States Supreme Court set forth the standard for considering such claims in *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997). In *Brown*, the court stated that a Section 1983 plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. at 404.

As in this case, the plaintiff in *Brown* did not claim that the hiring of the officer was illegal. Rather, the plaintiff's claim was "that a single facially lawful hiring decision can launch a series of events that ultimately cause a violation of federal rights." *Id*. at 405. In response to this statement of the claim, the Court stated that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* "Claims not involving an allegation that the

municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof." *Id.* at 406. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* at 407.

Also, in *Brown*, the plaintiff did not claim a pattern of improper hiring practices. Rather, the plaintiff sought "to trace liability to what can only be described as a deviation for [the sheriff's] ordinary hiring practices." In response to this claim, the Court stated that "[w]here a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high. Because the decision necessarily governs a single case, there can be no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate. Nor will it be readily apparent that the municipality's actions caused the injury in question, because the plaintiff can point to no other incident tending to make it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some intervening cause." *Id.* at 408-09.

The officer in *Brown* who was alleged to have used excessive force had a prior conviction for assault and battery. That assault and battery conviction appeared on the officer's criminal background check. However, it was unclear from the record before the Court whether the sheriff in charge of the hiring process had reviewed and ignored or failed to review the officer's background check. "Where a plaintiff presents a Section 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record, however, there is a

6

particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. The Court also concluded that "[t]he fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410-11.

    The Court assumed that a jury could properly have found that the sheriff's assessment of the officer's background was inadequate. "But, this showing of an instance of inadequate screening is not enough to establish 'deliberate indifference.' In layman's terms, inadequate screening of an applicant's record may reflect 'indifference' to the applicant's background. For purposes of a legal inquiry into municipal liability under Section 1983, however, that is not the relevant 'indifference.' A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference." *Id.* at 411.

    The *Brown* Court concluded that "a finding of culpability simply cannot depend on the

7

mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412. In doing a full review of the applicant's background, the Court decided that the plaintiff's showing that the applicant was highly likely to use excessive force was inadequate even though the applicant had a criminal conviction for assault and battery. *Id.* at 412-13. The Court stated that "[e]ven assuming without deciding that proof of a single instance of inadequate screening could ever trigger municipal liability, the evidence in this case was insufficient to support a finding that, in hiring [the officer], [the sheriff] disregarded a known or obvious risk of injury." *Id.* at 412.

The Court reiterated that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights. A failure to apply stringent culpability and causation requirements raises serious federalism concerns, in that it risks constitutionalizing particular hiring requirements that States have themselves elected not to impose." *Id.* at 415.

Defendants argue that *Brown* is dispositive of the Beckers' municipal liability claim and, as in *Brown*, Heber City should not be found liable. In *Brown*, despite the officer's prior convictions for assault and battery and resisting arrest, the Court concluded that the County was

8

not liable for the isolated decision to hire the officer without adequate screening because the respondent did not demonstrate that the decision "reflected a conscious disregard for a high risk" that the officer would use excessive force in violation of respondent's federally protected right. *Id.* at 415-16. The Beckers, however, argue that there is a genuine issue of material fact as to whether Heber City violated their constitutional rights by hiring Officer Bateman.

The Beckers contend that the issue is whether a review of Officer Bateman's personnel records at Wasatch County would show that the use of excessive force would have been a plainly obvious consequence of the hiring decision. However, the full standard from *Brown* is that the Beckers must demonstrate that Defendants' decision to hire Bateman reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference." *Id.* at 411.

As in *Brown*, Chief Rhoades' decision to hire Officer Bateman was legal, and Chief Rhoades did not authorize Officer Bateman to use excessive force. Chief Rhoades did not have Officer Bateman's personnel records in front of him when he decided to hire him. In addition to the testing procedures employed by Heber City, Chief Rhoades had a criminal background check and references for Officer Bateman.

The Beckers claim that this case is more egregious than *Brown* because, in *Brown*, the officer's conviction for assault and battery happened when he was in college when people make poor judgment calls, whereas, in this case, Officer Bateman's prior inappropriate conduct

9

occurred while he was employed at Wasatch County. However, when focusing on Heber City's actions, this case is less serious than *Brown* because the assault and battery charge in *Brown* appeared on a criminal history background check. Such a background check is commonly run and reviewed in the hiring process. Heber City ran such a check for Bateman. However, the alleged events from Bateman's past involve only statements made that are recorded in his personnel file. It is not common practice to request an applicant's personnel files. Therefore, unlike the municipality in *Brown,* Heber City would not and did not have that information before it when making the hiring decision.

Moreover, this case appears to be less serious than *Brown* given that this case contains only a record of statements that appear to have never actually been put into practice whereas *Brown* involved someone who had a criminal conviction for assault and battery. While Officer Bateman had stated five years earlier while working for Wasatch County that he liked to fight, liked confrontations, and that he had been taught to throw people to the ground and take them to jail if they resisted arrest, there was nothing in his employment history that showed he had ever actually acted in this manner. Officer Bateman was never written up for using excessive force while employed at Wasatch County. While the sergeant who heard the comments stated that Officer Bateman should be terminated for such comments, he never was. Officer Bateman was employed at Wasatch County for five more years and was employed there at the time he applied for the position with Heber City. Moreover, the fact that Bateman made such comments was a surprise to one of his fellow officers from that force. His fellow officer gave a good reference for Officer Bateman when he applied with Heber City.

The Beckers claim that there was a pattern of misconduct in Brown's personnel records which is sufficient to show that Bateman was likely to use excessive force. The Beckers also

have an expert witness who agrees with this assessment. However, there are no instances of Bateman using excessive force. Several incidents in his record are completely unrelated to an excessive force claim. And, the statements that do relate to the possible use of excessive force are only statements, not actions, from several years before Bateman applied to work for Heber City.

In any event, Heber City did not have the personnel records and hired Bateman based on the written, physical, and interview phases of the application process, the recommendation of a coworker at Wasatch County, and the fact that Chief Rhoades knew that Officer Bateman was the top DUI enforcement officer in the county. This hiring decision has to constitute deliberate indifference to Becker's constitutional rights. Deliberate indifference can only be found can only be found "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.

Deliberate indifference is a very high standard. The *Brown* Court did not find it despite the fact that the officer in question had been previously convicted of assault and battery, resisting arrest, and public drunkenness. In construing *Brown*, circuit courts have held that unless a job applicant has a history of engaging in the very conduct alleged by a Section 1983 plaintiff, the decision to hire the officer does not meet the deliberate indifference standard. *Morris v. Crawford Cnty, Ark.*, 299 F.3d 919 (8th Cir. 2001). In *Morris*, the Eighth Circuit found that a county was not liable for the excessive force of its officer where his employment records from a prior law enforcement job indicated that he had slapped an inmate, disobeyed orders, cursed at employees, and been accused of beating his wife. *Id.* at 925. The court found that the nature of

these complaints did not satisfy "the strong causal connection needed to find that it was an obvious risk that he would use excessive force." *Id.* at 925-26.

Based on *Brown* and the circuit courts applying *Brown*, the court concludes that the decision to hire Officer Bateman did not show deliberate indifference. There was nothing in Officer Bateman's employment history showing that he had ever used excessive force. His statements are not enough. Furthermore, his other disciplinary problems do not have a sufficient causal connection to show a likelihood to use excessive force. Therefore, the court grants Defendants Heber City and Chief Rhoades's motion for summary judgment on the Becker's municipal liability claim. Based on this determination, the court also concludes that there is no basis for Mrs. Becker's loss of consortium claim.

## CONCLUSION

For the reasons stated above, Defendants Heber City and Chief Rhoades' Renewed Motion for Summary Judgment is GRANTED. Because this ruling disposes of all of the claims at issue in the case, the Clerk of Court is directed to close the case and enter judgment in favor of Defendants. Each party shall bear its, his, or her own costs.

DATED this 7th day of November, 2013.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge